UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK C. WILLIAMS,

    Plaintiff,

v.                                                          Case No:   2:16-cv-11-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Mark C Williams' Complaint (Doc. 1) filed on January 6, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.   Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

    **A.   Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.     Procedural History

Plaintiff filed applications for disability insurance benefits and for supplemental security income asserting an onset date of March 1, 2010. (Tr. at 231, 235). Plaintiff's applications were denied initially on October 14, 2011, and on reconsideration on December 22, 2011. (Tr. at 145-46, 171-72). A hearing was held before Administrative Law Judge ("ALJ") Maria C. Northington on April 7, 2014. (Tr. at 60-104). The ALJ issued an unfavorable decision on July 30, 2014. (Tr. at 26-48). The ALJ found Plaintiff not to be under a disability from March 1, 2010, through the date of the decision. (Tr. at 42).

On October 16, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 15-21). Plaintiff, proceeding *pro se* at that time, filed a Complaint (Doc. 1) in the United States District Court on January 6, 2016. Defendant filed an Answer (Doc. 16) on April 8, 2016. On September 7, 2016, attorneys Carol Avard and Mark Zakhvatayev filed a notice of appearance on behalf of Plaintiff. (Doc. 25 at 1). Both parties filed memoranda in support of their positions. (Docs. 26, 29). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 28). This case is ripe for review.

### C.     Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) can perform other work of the sort found in the national economy. *Packer*, 542 F. App'x at 891 (citing 20 C.F.R. § 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004)).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2013. (Tr. at 31).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2010, the alleged onset date.  (Tr. at 31). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "history of bilateral ankle disorder with reconstruction that includes the torn right Achilles tendon incurred in March 2011, herniated disc at L5-S1 with minimal extension into the light foramen and morbid obesity."  (Tr. at 31).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 33).

After review of the record, the ALJ determined Plaintiff's residual functional capacity ("RFC").  Specifically, the ALJ determined that Plaintiff:

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

3

>is capable of performing a wide range of light work with the ability to occasionally lift and/or carry up to 20 pounds frequently as defined in the Dictionary of Occupational Title (DOT) and regulations. The claimant can also perform sedentary work as defined in Dictionary of Occupational Title (DOT) and the regulations. The claimant has no limits for sitting in an eight-hour workday. He is capable of standing and/or walking for up to six hours in an eight-hour workday. In the course of work, he should be allowed the ability to optionally alternate between sitting and standing, but such would not cause him to be off-task. It bears noting that this could be every 15 minutes or as needed as testified by the vocational expert and as recommended by Dr. Bordsky [sic]. He is able to perform occasional postural functions of climbing ramps[,] stairs and stooping. He is to perform no crawling, no kneeling and no climbing of ladders[,] ropes [or] scaffolds. The claimant is to perform no overhead lifting, no overhead carrying and no overhead reaching with the bilateral upper extremities. In the course of work, he is to have no exposure to extremes of hot, humidity or cold temperatures. Secondary to his non-severe depression anxiety and in affordance of the benefit of the doubt the claimant retains the capacity to understand, remember and carry-out at least SVP 3-4 instructions and perform SVP 3-4 tasks as consistent with semi-skilled work.

(Tr. at 34-35).

At step four, the ALJ determined that Plaintiff is capable of performing his "past relevant work as receptionist as generally and usually performed as well as some limited cashier jobs." (Tr. at 40). The ALJ found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. at 40). Specifically, the vocational expert ("VE") testified that Plaintiff's past work could be classified under the Dictionary of Occupational Titles ("DOT") as a store cashier (DOT #211.462-014), a job with a Specific Vocational Preparation ("SVP") of 3 and a light exertional level, and a receptionist (DOT #237.367-038), a job with an SVP of 4 and a sedentary exertional level. (Tr. at 40). The VE testified that the limitations assessed in Plaintiff's RFC "would not preclude the performance of these jobs." (Tr. at 40). Thus, in comparing Plaintiff's RFC with the physical demands of work as a cashier and receptionist, the ALJ found that Plaintiff "is able to perform both occupations as generally performed." (Tr. at 40).

Even though the ALJ determined at step four that Plaintiff could perform past relevant work, the ALJ proceeded to make alternative findings for step five. (*See* Tr. at 40-41). The ALJ found – considering Plaintiff's age, education, work experience, and RFC – that Plaintiff "has also acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (Tr. at 41). Specifically, the ALJ found that Plaintiff acquired the following skills: "the ability to communicate, utilize computers, schedule appointments, and answer questions." (Tr. at 41). The VE testified that an individual – with the same age, education, past relevant work experience, and RFC as Plaintiff and with the skills acquired in Plaintiff's past relevant work but with no additional skills – could perform the following occupations: Small Product Assembler, Medical Hand Packer, Appointment Clerk, Photo Hand Mounter, and Jewelry Production Preparer. (Tr. at 41-42).

The ALJ found that the VE's "testimony is largely consistent with the information contained in the Dictionary of Occupational Titles." (Tr. at 42). The ALJ further noted that the VE's "testimony regarding the sit/stand option is based upon the vocational expert's experience in observing how jobs are performed and in placing people in relevant jobs." (Tr. at 42). The ALJ stated that although Plaintiff's "additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 202.22." (Tr. at 42).

The ALJ concluded, therefore, that Plaintiff was not under a disability from March 1, 2010, through the date of the decision. (Tr. at 42).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson*, 402 U.S. at 401; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff argues four issues on appeal. These issues include:

1. Whether the Court should remand the present case for further proceedings based on the new and material evidence that Plaintiff submitted to the Appeals Council.

2. Whether the ALJ's decision is supported by substantial evidence as to the opinion of the non-examining State agency physician, Ronald Kline, M.D.

6

3. Whether the ALJ properly rejected the opinions of Plaintiff's treating sources.

4. Whether the VE's testimony was reliable and provided substantial evidence to support the ALJ's decision.

(Doc. 26 at 1-2). The Court addresses these issues below, beginning with the third issue concerning the weight given to Plaintiff's treating sources.

### A. The Weight Given to Plaintiff's Treating Sources

Plaintiff argues that "the ALJ failed to properly weigh and explain the weight given to the Plaintiff's treating source opinions from MCPB Orthopedics and Neurosurgery." (Doc. 26 at 16). Specifically, Plaintiff argues that the ALJ erred as to the opinion of Dr. Marc Brodsky. (*Id.* at 19). Plaintiff argues that the ALJ "gave Dr. Brodsky's opinion 'moderate' weight, but failed to explain which parts of Dr. Brodsky's opinion she accepted and which part of his opinion she rejected and why." (*Id.* (citing Tr. at 39)). Additionally, Plaintiff argues that the ALJ erred in reviewing a treating source opinion dated January 31, 2014. (*Id.* at 17). Plaintiff contends that the ALJ "oversimplified the nature of the Plaintiff's impairments and ignored significant evidence contradicting her conclusions" as to this opinion. (*Id.* at 17).

Defendant disagrees, arguing that the ALJ properly weighed the opinions from Plaintiff's treating sources. (Doc. 29 at 13). Specifically, Defendant argues that the ALJ's decision as to Dr. Brodsky's opinion "clearly shows which portions of Dr. Brodsky's statements the ALJ accepted (Tr. 34, 39), and she was not required to address every aspect of his statements." (Doc. 29 at 15 (citations omitted)). Defendant contends that the ALJ "thoroughly discussed Dr. Brodsky's treatment notes and indicated that she only accepted portions of his statements by affording them 'moderate weight' in contrast to the 'significant weight' she afforded to Dr. Kline's opinion." (Doc. 29 at 15 (citing Tr. at 37, 39)). Defendant contends that "the ALJ

7

specifically identified the portion of Dr. Brodsky's opinion that she accepted in her RFC finding, which states that Plaintiff required the ability to alternate between sitting and standing, which could be every 15 minutes or as needed 'as recommended by Dr. B[ro]dsky.'" (Doc. 29 at 15 (alteration in original) (citing Tr. at 34)).  Thus, Defendant argues that "[a]s the ALJ clearly only accepted a portion of Dr. Brodsky's opinion, Plaintiff's arguments concerning a hypothetical question based on wholesale adoption of Dr. Brodsky's opinion are meritless." (Doc. 29 at 15-16 (citation omitted)).  Additionally, Defendant contends that the ALJ properly discounted the treating source opinion dated January 31, 2014 "because it was inconsistent with other evidence in the record." (*Id.* at 16).

In reviewing this issue, the Court notes that medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  An ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  When evaluating a medical source, the factors to be considered by an ALJ include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id*. (citations omitted).

The Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "Good cause"

exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1241. When an ALJ elects to disregard the opinion of a treating physician, he or she must clearly articulate the reasons. *Id.* An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)). However, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Id.* (quoting *Sharfarz*, 825 F.2d at 279). In situations where an ALJ "articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Upon review, the Court finds that the ALJ failed to articulate specific reasons for not according the opinion of Dr. Brodsky – Plaintiff's treating orthopedist – controlling weight. *See Poellnitz*, 349 F. App'x at 502. Specifically, as to Dr. Brodsky's opinion, the ALJ stated:

> The claimant's treating orthopedist, Dr. Marc Brodsky, opined the claimant was unable to be gainfully employed (Ex. 19F, p. l). Dr. Brodsky opined the claimant had limitations standing, walking, bending, lifting, and climbing stairs and ladders (Ex. 19F, p. 2). The claimant was also advised to change positions every 15 minutes as is accommodated by the determined RFC (Ex. 19F, p. 4; 25F, p. 3). Dr. Brodsky also opined the claimant should avoid lifting objects greater than 10 to 15 pounds (Ex. 19E p. 8, 15; 21E p. 3). The undersigned gives the opinion of Dr. Brodsky moderate weight and is accommodated by the sedentary receptionist job, as well as, by the range of jobs cited.

(Tr. at 39). While the ALJ states that Dr. Brodsky's opinion is given "moderate weight," the ALJ does not state *why* Dr. Brodsky's opinion is not given significant or controlling weight. If given controlling or significant weight, the Court cannot say with certainty that Plaintiff's RFC

9

would not include additional exertional or nonexertional limitations. Indeed, a review of Dr. Brodsky's opinion appears to show that his opinion includes greater limitations than what is included in Plaintiff's RFC assessment. (*See* Tr. at 34, 545).

For example, the ALJ found that Plaintiff has "no limits for sitting in an eight-hour workday." (Tr. at 34). Dr. Brodsky stated, however, that Plaintiff "must limit all activities that cause pain." (Tr. at 545). Dr. Brodsky specifically stated that Plaintiff must "limit the extended periods of standing, bending, walking, lifting, climbing stairs and climbing ladders, *ability to sit*, stand or walk and alternating for comfort every 15 minutes, limited lifting less than or equal to 15 pounds, limited bending, squatting or kneeling." (Tr. at 545 (emphasis added)). If additional limitations were included in Plaintiff's RFC assessment related to Plaintiff's ability to sit during a workday, these additional limitations could impact the VE's testimony and/or the ALJ's findings in assessing Plaintiff at steps four and five of the sequential evaluation. While the Court does not know with certainty that adding additional limitations would impact the VE's testimony or the ALJ's decision in this case, the fact that the possibility exists demonstrates that the ALJ's failure to articulate specific reasons for the "moderate weight" given to Dr. Brodsky's opinion was not harmless.

Accordingly, because the ALJ did not articulate specific reasons for the weight given to Dr. Brodsky's opinion and because that failure was not harmless, the Court finds that "good cause" does not exist for failing to accord Dr. Brodsky's opinion significant or controlling weight. *See Phillips*, 357 F.3d at 1240-41. As such, the Court finds that the ALJ's decision is not supported by substantial evidence as to the weight given to Dr. Brodsky's opinion and, therefore, reverses and remands the decision of the Commissioner. Upon remand, the ALJ need not give any particular weight to Dr. Brodsky's opinion. Instead, the Commissioner must re-

evaluate the weight given to Dr. Brodsky's opinion, state what weight is given to Dr. Brodsky's opinion, and explain the reasons for giving Dr. Brodsky's opinion such weight.

As to the treating source opinion dated January 31, 2014, the Court notes that a reason the ALJ stated for giving the opinion "little weight" was because it was inconsistent with other findings in the record. (Tr. at 40). The Court notes, however, that the January 31, 2014 opinion originates from MCPB Orthopedics and Neurosurgery—the same practice group with which Dr. Brodsky is associated. (*See* Tr. at 545, 588-92). While it is unclear if Dr. Brodsky gave this opinion,[2] the January 31, 2014 treating source opinion appears to be largely consistent with Dr. Brodsky's opinion. (*See* Tr. at 545, 589). For instance, both opinions indicate that Plaintiff needs to alternate positions to reduce pain every 15 minutes. (*See* Tr. at 545, 589). As such, given that both records are from the same practice and appear to be largely consistent, it is unclear to the Court why the January 31, 2014 opinion was given "little weight" while Dr. Brodsky's opinion was given "moderate weight." The Court finds that this inconsistency demonstrates that the ALJ's conclusion as to the weight given to this opinion was not supported by substantial evidence. Upon remand, the ALJ should address the apparent inconsistency between the weight given to the January 31, 2014 treating source opinion and Dr. Brodsky's opinion.

As a final point, the Court notes another significant issue with the ALJ's Decision as it relates to her review of Dr. Brodsky's medical opinion. Specifically, Plaintiff argues that the

---

[2] Plaintiff notes that the name of the treating source in Exhibit 24F is illegible. (Doc. 26 at 17 n.5 (citing Tr. at 40)). Plaintiff states that "it is possible that the signature on the statement belongs to Michael Wycoki, PA-C." (Doc. 26 at 17 n.5). Plaintiff argues, however, that "[e]ven if it were the opinion of a physicians' assistant rather than a physician, it is still "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." (*Id.* (citing SSR 06-3p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006)).

ALJ was required "to specifically define the frequency of the sit/stand option." (Doc. 26 at 20 (citing SSR 96-9p)). Plaintiff argues that the lack of specificity led to improper hypotheticals asked to the VE. (*See* Doc. 26 at 20).

In support, Plaintiff cites Social Security Ruling ("SSR") 96-9p. SSR 96-9p states

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.* It may be especially useful in these situations to consult a *vocational resource* in order to determine whether the individual is able to make an adjustment to other work.

1996 WL 374185, at *7 (emphasis added).

Upon review, the Court agrees with Plaintiff. While Social Security Rulings are not binding on this Court, *see Young v. Colvin*, No. 3:14-cv-888-J-JRK, 2015 WL 4620573, at *5 (M.D. Fla. July 31, 2015), the Court finds that the ALJ's lack of specificity is problematic in this instance. For example, in her decision, the ALJ stated that Dr. Brodsky advised Plaintiff "to change positions every 15 minutes." (Tr. at 39). The ALJ further stated that this restriction "is accommodated by the determined RFC." (Tr. at 39). Looking at the RFC assessment, the ALJ states that Plaintiff "should be allowed the ability to optionally alternate between sitting and standing, but such would not cause him to be off-task. It bears noting that this could be every 15 minutes or *as needed* as testified by the vocational expert and as recommended by Dr. Bordsky [sic]." (Tr. at 34 (emphasis added)). As pointed out by Plaintiff, however, alternating sitting and standing "as needed" may be much more frequent than every 15 minutes. (Doc. 26 at 22 n.7).

Furthermore, it appears the specific frequency of alternating between sitting and standing was an important factor that the VE considered in assessing Plaintiff's ability to work. Specifically, in her questioning of the VE, the ALJ asked the VE:

> ALJ: Would it make any difference if I said every 15 minutes or briefly as needed, in your answer?
>
> VE: I would say if this person had to stand, it all depends on the kind of work. If he was doing unskilled work . . . if he had to change his position more than three times and hour . . . then I couldn't identify any unskilled work he could do.
>
> ALJ: All right, okay. But if it was semi-skilled then every 15 minutes or as needed would be okay?
>
> VE: That would be okay.

(Tr. at 98-99). Upon review, it is unclear to the Court whether more specificity would impact the VE's ultimate opinion. Nevertheless, the Court is persuaded that merely stating that Plaintiff needs to alternate every 15 minutes or "as needed" is not specific enough in this instance to evaluate Plaintiff's ability to work. The Court finds, therefore, that the ALJ's lack of specificity as to the frequency of Plaintiff's need to alternate sitting and standing is another reason demonstrating that the ALJ's decision was not supported by substantial evidence. Upon remand, the ALJ should address with specificity the frequency of Plaintiff's need to alternate sitting and standing.

### B.     Plaintiff's Remaining Arguments

Plaintiff's remaining arguments focus on a number of issues that cannot be resolved until it is clear to the Court that the ALJ properly considered all of the relevant medical evidence in the record. Because the Court has found that, upon remand, the ALJ must evaluate certain medical opinions, which contain impairment evidence, and that evidence may impact the Court's analysis of other elements of the ALJ's Decision, the Court finds that any ruling on Plaintiff's

remaining arguments would be premature at this time. Upon remand, the ALJ must reevaluate all of the medical evidence of record in evaluating Plaintiff's case.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

Accordingly, the Court hereby **ORDERS** that:

1) The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to review the medical evidence of record. Specifically, the Commissioner should (1) review of the weight given to Dr. Brodsky's medical opinion, (2) review the apparent inconsistency between the weight given to the January 31, 2014 treating source opinion and Dr. Brodsky's opinion, and (3) state with specificity the frequency of Plaintiff's need to alternate sitting and standing.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on February 23, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties